## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

Filho Canon Larose,[1]

     Petitioner

v.

Todd Blanche,[2] et al.,

    Respondents

Case No.: 2:26-cv-00423-JAD-NJK

**Order Granting Habeas Petition and Denying as Moot Motion for Temporary Restraining Order**

[ECF Nos. 8, 10, 23]

Petitioner Filho Canon Larose is a citizen of the Democratic Republic of Congo (DRC) who arrived in the United States in 2005 and was ordered removed to the DRC 2006, though he was granted withholding of removal to that country under the United Nations Convention Against Torture.  Immigrations and Customs Enforcement (ICE) officers released him from custody after a few months because they could not effectuate his removal to the DRC.[3]  But on January 25, 2026, ICE re-arrested Larose, and he has been in custody at the Nevada Southern Detention Center ever since.

In February 2026, Larose filed a pro se petition for a writ of habeas corpus, seeking his release from custody.[4]  The court appointed counsel for Larose, who filed an amended habeas

---

[1] The court's caption originally spelled the petitioner's name as "Filito Canom Larese." Petitioner's counsel has informed the court that his name is Filho Canon Larose.  So I direct the Clerk of Court to update the caption with Larose's corrected name.

[2] Todd Blanche has replaced respondent Pamela Bondi as the Acting Attorney General of the United States, so I substitute him as a respondent under Federal Rule of Civil Procedure 25(d).

[3] ICE has had different institutional names throughout the years.  To simplify matters, I refer to the agency with the power and authority to remove noncitizens as ICE even if it may have been called something else when Larose was ordered removed.

[4] ECF No. 1-1.

petition and a motion for a temporary restraining order.[5]  Larose argues that ICE has detained him for too long without showing that he is likely to be removed in the reasonably foreseeable future, that the government violated its own regulations when it re-detained him without following established procedures for revoking his order of supervision, and that ICE's policy of removing noncitizens to a third country without adequate notice or a hearing violates his due-process rights.  Larose's habeas petition is fully briefed, and I held a hearing on his TRO motion on April 7, 2026.

I grant Larose's habeas petition.  Larose has been cumulatively detained for six months under his order of removal.  He has shown that there is no good reason to believe his removal is forthcoming, and the government has failed to present any competent evidence suggesting otherwise.  Larose has also shown that ICE failed to follow its own regulations when it arrested him and it deprived him of the process that should have accompanied his re-detention.  And Larose has demonstrated that ICE's third-country-removal policy violates the Fifth Amendment's due-process clause.

So I order Larose's immediate release, subject to the conditions of his preexisting order of supervision.  I also prohibit the respondents from re-detaining Larose absent a demonstrable change in circumstances in ICE's ability to remove him.  And I prohibit the respondents from removing Larose to a third country without first providing adequate notice and a meaningful opportunity to seek any available relief from that removal.  Finally, because resolving the petition affords Larose the relief he seeks, I deny as moot his motion for a temporary restraining order.

---

[5] ECF Nos. 8, 10.

**Background**

Petitioner Filho Canon Larose entered the United States using a fake Belgian passport in 2005.[6]  He was really from the Democratic Republic of the Congo (DRC), and he was placed in immigration proceedings in 2006.[7]  That year, an immigration judge ordered Larose's removal but granted his application for withholding of removal to the DRC under the United Nations Convention Against Torture (CAT).[8]  Larose was detained from December 8, 2006, to February 22, 2007, under that removal order.[9]  He was eventually released on an order of supervision, presumably because ICE could not effectuate his removal.  At one point during his release, Larose attempted to apply for travel documents to Mexico, but Mexico refused to accept him.[10]

Larose has lived in the United States under an order of supervision for nearly two decades.  On January 23rd of this year, Larose was arrested by the Las Vegas Metropolitan Police on suspicion of driving under the influence.[11]  He was taken into ICE custody two days later, and he has been detained at the Nevada Southern Detention Center ever since.  Within the last few months, ICE reached out to the Belgian consulate to see if Larose had any ties to that

---

[6] ECF No. 14 at 2.

[7] *Id.*

[8] ECF No. 14-1 at 8.

[9] ECF No. 23-1.  At the TRO hearing, I ordered the government to file a supplement informing the court how long Larose was detained following entry of his 2006 removal order.  The government filed that document a few days late, so it also filed a motion for leave to file the supplement.  ECF No. 23.  With good cause appearing, I grant that motion and consider the government's supplement.

[10] *See* ECF No. 21 (minutes of April 7, 2026, TRO hearing).  The parties have different accounts of when this Mexico attempt was made and by whom.  Larose's counsel stated that it was her understanding that ICE sought travel documents from Mexico around 2006.  The government instead contends that Larose attempted to effectuate his own removal to Mexico within the last couple of years.  Ultimately, this difference doesn't meaningfully affect the analysis of the issues presented in Larose's petition.

[11] ECF No. 14-1 at 5.

3

country, but Belgium responded that he did not have valid citizenship documents there.[12]  About a month after his arrest, Larose filed a pro se habeas petition seeking his release.[13]  I appointed counsel, and in March, Larose filed an amended petition and a motion for a temporary restraining order.  The hearing on that motion was held on April 7, 2026.

## Discussion

**A.     This court has habeas jurisdiction over Larose's claims.**

The constitution makes a writ of habeas corpus "available to every individual detained in the United States."[14]  That writ permits a person who is in custody to challenge the legality of his detention, and the court has the authority to release the petitioner if it determines that he is illegally detained.  The court's habeas jurisdiction encompasses a noncitizen's challenge to his detention under the United States' immigration laws.[15]

The government sees it differently.  It argues that this court is without jurisdiction to consider Larose's case because 8 U.S.C. § 1252(g) bars district courts from reviewing the decision to "[c]ommence proceedings, adjudicate cases, or execute removal orders"[16] and § 1252(b)(9) channels review of final orders of removal to the federal courts of appeals.[17]  But the government's § 1252(g) argument is unavailing.  Courts have habeas jurisdiction to consider

---

[12] *See* ECF No. 21.  Many of the facts recited here stem from unsupported allegations or attorney argument at the TRO hearing.  I take as true facts that are not genuinely disputed by the opposing party.

[13] ECF No. 1-1.

[14] *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. art 1, § 9, cl. 2).

[15] *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *Demore v. Kim*, 538 U.S. 510, 517 (2003).

[16] 8 U.S.C. § 1252(g).

[17] *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1035 (9th Cir. 2016).

4

challenges to the lawfulness of immigration-related detention.[18]  And "§ 1252(g) does not prohibit challenges to unlawful practices merely because they are in some fashion connected to removal orders."[19]  Rather, § 1252(g) is a "narrow" "discretion-protecting provision"[20] that bars challenges only to the three discrete actions enumerated in the statute.[21]

The government's § 1252(b)(9) argument fares no better.  Section 1252(b)(9) similarly does not present a jurisdictional bar when petitioners are not "asking for review of an order of removal," "challenging the decision to detain them in the first place or to seek removal," or "challenging any part of the process by which their removability will be determined."[22]  Larose does not challenge the decision to commence his removal proceedings or to execute his removal order, but rather ICE's decision to detain him indefinitely and remove him to a third country without providing adequate notice and a hearing under the due-process clause of the U.S. Constitution.  Because this court has jurisdiction to consider those challenges, I now adjudicate their merits.

**B.     Larose has shown that he is entitled to relief on his prolonged-detention claim.**

   *1.     The government has authority to detain noncitizens after they have been ordered removed.*

The Immigration and Nationality Act (INA) and its implementing regulations establish a complex set of rules governing the government's authority to arrest, detain, order removed, and

---

[18] *See Zadvydas*, 533 U.S. at 687.

[19] *Ibarra-Perez v. United States*, 154 F.4th 989, 997 (9th Cir. 2025).

[20] *Id.* at 996.

[21] *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) ("The provision applies only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'").

[22] *Jennings v. Rodriguez*, 583 U.S. 281, 294–95 (2018).

deport noncitizens.  8 U.S.C. § 1231(a) governs the detention of noncitizens who have been ordered removed.  It establishes a 90-day "removal period" that begins on "(i) the date the order of removal becomes administratively final, (ii) if the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order," or (iii) the date the noncitizen is released from non-immigration detention.[23]  During that 90-day period, detention is mandatory.[24]  The statute gives the government the ability to detain a noncitizen beyond that 90-day removal period under § 1231(a)(6) if he is inadmissible; removable "as a result of violations of status requirements or entry conditions, violations of criminal law, or reasons of security or foreign policy[;]"[25] or has been determined "to be a risk to the community or unlikely to comply with the order of removal."[26]  If those conditions aren't met, the government may release the noncitizen "subject to certain terms of supervision."[27]

### 2.   *The Supreme Court has limited the government's statutory authority to indefinitely detain noncitizens awaiting removal.*

Section 1231(a)(6) contains no limit on the length of time that a noncitizen may be held after his removal order becomes final.  But in *Zadvydas v. Davis*, the United States Supreme Court rejected the government's contention that noncitizens can be held indefinitely under § 1231(a)(6) because that interpretation "would raise a serious constitutional problem" under the Fifth Amendment's due-process clause.[28]  To avoid those constitutional concerns, the High Court

---

[23] 8 U.S.C. § 1231(a)(1)(B).

[24] 8 U.S.C. § 1231(a)(2)(A).

[25] *Zadvydas*, 533 U.S. at 682.

[26] 8 U.S.C. § 1231(a)(6).

[27] *Zadvydas*, 533 U.S. at 682 (quoting 8 U.S.C. § 1231(a)(6)) (cleaned up).

[28] *Id.* at 690.

6

interpreted the statute to permit continued detention only if a noncitizen's removal is "reasonably foreseeable."[29]  It determined that six months of post-removal-period detention is presumptively reasonable.[30]  But after six months, the noncitizen must "provide[] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future" to show that his prolonged detention exceeds the government's statutory authority and that he should be released from ICE custody.[31]  If the noncitizen meets that burden, "the government must respond with evidence sufficient to rebut that showing."[32]  And as "the period of prior post-removal confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink."[33]

> **3.      Larose has shown that he has been detained for more than six months, and he has good reasons to believe he will not be removed in the reasonably foreseeable future.**

Larose has been detained for more than 100 days since his January 2026 arrest.  The government contends that this short time period forecloses his *Zadvydas* claim because his detention has not exceeded the presumptively reasonable six-month period.  But Larose responds that he was detained under his removal order in 2006 for approximately four to five months, and he argues that time should be cumulatively considered in the *Zadvydas* analysis.  The government has since confirmed that Larose was in ICE custody pending removal for 76 days from December 8, 2006, through February 22, 2007.[34]  The government maintains that the prior

---

[29] *Id.* at 699.

[30] *Id.* at 701.

[31] *Id.*

[32] *Id.*

[33] *Id.* (cleaned up).

[34] ECF No. 23-1.

detention period is irrelevant to Larose's prolonged-detention claim, though it doesn't provide any analysis to support that interpretation. Rather, several courts have found that prior detention periods must be counted; otherwise, the government could detain, release, and re-detain noncitizens ad nauseam without technically violating *Zadvydas*.[35] I agree with the reasoning of those courts. *Zadvydas* presumed that detention following removal could reasonably last six months. If, as here, the noncitizen has been previously detained under the same removal order, the government cannot simply restart the six-month clock whenever it chooses to re-detain him. So I consider prior detention periods in my analysis.

Taking Larose's 2006–2007 detention into account, I find that Larose has been detained for more than six months as of the date of this order. So Larose bears the initial *Zadvydas* burden of showing that there are "good reason[s] to believe that that there is no significant likelihood of removal in the reasonably foreseeable future."[36] To meet that burden, Larose notes that he has been subject to an order of removal for about 20 years, and ICE has been unable to remove him throughout that period. He attests that he cannot be deported to his home country under the CAT, and prior attempts to remove him to third countries were unsuccessful. I find that Larose's allegations are sufficient to show a good reason to believe that he is not likely to be removed in the reasonably foreseeable future.

---

[35] *See, e.g.*, *Shalala v. Mattos*, 2025 WL 3568234, at * 6 (D. Nev. Dec. 14, 2025) (considering the "full amount of time that Petitioner has spent in immigration detention since he was ordered removed" because "[o]therwise, the government could simply circumvent the INA by releasing and re-detaining citizens such that they never reach six months of continuous detention"); *Nguyen v. Scott*, 796 F. Supp. 3d 703, 722 (W.D. Wash. 2025) (noting that, "under the reasoning of *Zadvydas*, a series of releases and re-detentions by the government . . . in essence results in an indefinite period of detention, albeit executed in successive six-month intervals").

[36] *Zadvydas*, 533 U.S. at 701.

**4.      *The government has failed to rebut Larose's showing with evidence of foreseeable removal.***

        *a.*      *8 U.S.C. § 1231(a)(1)(C) does not supply a basis for Larose's detention.*

The government's primary argument in response to Larose's prolonged-detention claim is that his detention is not authorized by § 1231(a)(6), but instead by § 1231(a)(1)(C).  That subsection permits extension of the initial, mandatory 90-day detention period "if the [noncitizen] fails or refuses to make timely application in good faith for travel or other documents necessary to the [noncitizen's] departure or conspires or acts to prevent the [noncitizen's] removal subject to an order of removal."[37]  At the TRO hearing, the government contended that Larose was being detained because he didn't make adequate attempts to remove himself to any country other than the DRC throughout the 20 years that he remained in the United States after being ordered removed.

The government's interpretation of § 1231(a)(1)(C) is contradicted by the subsection's plain language and by Ninth Circuit precedent.  It does not point to, and I cannot find, any case that applied § 1231(a)(1)(C) to permit re-detention following the expiration of the 90-day removal period established by § 1231(a)(2).  The plain language of the statute does not appear to allow that maneuver: it permits the mandatory removal period to be "extended beyond a period of 90 days," noting that the noncitizen "may remain in detention during such extended period" if he fails to apply for travel documents or otherwise impedes ICE's attempts to remove him.[38]  The statute's wording suggests that it applies only to noncitizens who are detained within the 90-day removal window and, during that time, refuse to cooperate with ICE's attempts to remove

---

[37] 8 U.S.C. § 1231(a)(1)(C).

[38] *Id.*

9

them.  The government does not explain how it reads § 1231(a)(1)(C) to permit re-detention at any point that ICE decides that a noncitizen subject to an order of supervision failed to affirmatively seek his own deportation after the 90-day mandatory-detention period already expired.

The government's position also cannot be squared with the Ninth Circuit's interpretation of § 1231(a)(1)(C).  Following the Supreme Court's *Zadvydas* decision, detained noncitizens who refused to cooperate with ICE's removal attempts during the first 90 days of their detention, and were thus detained beyond that period, attempted to argue that they were being indefinitely detained under *Zadvydas*.  In *Pelich v. INS*[39] and *Lema v. INS*,[40] the Ninth Circuit emphatically rejected that argument, finding that continued mandatory detention could be authorized under § 1231(a)(1)(C).  It interpreted the provision as permitting the extension of the removal period when a noncitizen takes active steps to evade removal efforts.  In *Pelich*, the court held that a noncitizen's refusal to fill out a passport application and misrepresentations about his lineage impeded removal efforts such that he could not meet his burden of showing a likelihood of foreseeable removal.[41]  In *Lema*, the noncitizen misrepresented his citizenship and did not comply with requests to apply for travel documents or correct his misrepresentations during the 90-day removal period.[42]  The court held that the noncitizen "refuse[d] to cooperate fully and honestly with officials to secure travel documents from a foreign government" and thus could not meet his burden under *Zadvydas*.[43]

---

[39] *Pelich v. INS*, 329 F.3d 1057 (9th Cir. 2003).

[40] *Lema v. INS*, 341 F.3d 853 (9th Cir. 2003).

[41] *Pelich*, 329 F.3d at 1060.

[42] *Lema*, 341 F.3d at 855.

[43] *Id.* at 856.

In 2008, the Ninth Circuit addressed § 1231(a)(1)(C) again. In *Prieto-Romero v. Clark*, the circuit court emphasized that the provision was not "an independent source of detention authority," but instead "authorizes the government to *continue* detaining a[] [noncitizen] '[d]uring the removal period.'"[44] And in *Diouf v. Mukasey*, a noncitizen was detained after he offered to voluntarily self-deport during the removal period but stayed in the country past his departure date, refused to appear at the surrender date that was ordered after ICE learned that he did not self-deport, and refused to get on a plane to his home country during his detention.[45] The Ninth Circuit panel clarified that § 1231(a)(1)(C) "extend[s] the removal period for the duration of the [noncitizen's] obstruction" and, when the obstruction ends, the 90-day clock resets.[46] In each of these cases, the noncitizen thwarted removal efforts during the mandatory 90-day removal period, and the court held that § 1231(a)(1)(C) justified an extension of that period.

In short, § 1231(a)(1)(C) unambiguously applies to a noncitizen's obstruction of removal during the 90-day mandatory detention period established in § 1231(a)(2). After that, detention "shift[s] from § 1231(a)(2) to § 1231(a)(6),"[47] and *Zadvydas* applies. The government's attempt to expand that subsection to permit mandatory detention if a noncitizen does not take affirmative steps to remove himself after the mandatory 90-day removal period has already expired finds no basis in the statute or this circuit's cases interpreting it.[48]

---

[44] *Prieto-Romero v. Clark*, 534 F.3d 1053, 1060 (9th Cir. 2008) (quoting 8 U.S.C. § 1231(a)(1)(C)).

[45] *Diouf v. Mukasey*, 542 F.3d 1222, 1225–27 (9th Cir. 2008).

[46] *Id.* at 1231.

[47] *Id.*

[48] This doesn't leave the government without options to address a noncitizen's failure to assist with his own removal, as other statutes and regulations permit re-detention, and even criminal prosecution, in those instances. Orders of supervision generally require a noncitizen to comply with ICE requests to assist with obtaining travel documents, and those supervision orders can be revoked if the noncitizen does not. *See* 8 C.F.R. §§ 241.4, 241.13. 8 U.S.C. § 1253(a)(1)

Even if the government's interpretation of § 1231(a)(1)(C) were defensible, it has provided no evidence to show that the statute justifies Larose's continued detention. "[I]t is the burden of the government to document the conduct that extends the removal period under § 1231(a)(1)(C)."[49] At the TRO hearing, the government argued that Larose did not affirmatively seek to deport himself during the 20 years that he was in this country under an order of supervision. But counsel could not point to any evidence showing that was the case. He could not show that Larose received any notices that he failed to comply with his obligation to seek travel documents to some third country. He could not show that Larose was warned during his regular check-ins with ICE officials that he needed to take certain steps to seek self-deportation, or that he skipped those check-ins.[50] And he confirmed that Larose had attempted to obtain travel documents to Mexico at some point but that Mexico refused to accept him, showing that Larose did not entirely abandon his attempts to self-deport. The government also fails to present any evidence or argument showing that Larose has obstructed any ICE attempts at his removal during the past few months that he has been in ICE custody.

Not only does this evidentiary dearth foreclose the government's argument, but even if I were to accept these attorney statements as fact, Larose's apparent "failure" to make timely applications for removal does not rise to the level that the Ninth Circuit has established to show

---

imposes criminal sanctions on noncitizens who "willfully fails or refuses to depart from the United States" or "to make timely application in good faith for travel or other documents necessary" to his departure. The government does not argue that either of these options applies to Larose.

[49] *Diouf*, 542 F.3d at 1231 n.4 ("Given what is at stake for the [noncitizen], we believe it inappropriate to allow the [g]overnment to satisfy its burden on inferences alone.").

[50] Counsel merely stated that he believed ICE agents would always ask a noncitizen under an order of supervision to make attempts to self-deport, but he did not know specifically whether Larose was given those instructions.

that a noncitizen is subject to continued detention under § 1231(a)(1)(C).  This circuit has emphasized that continued detention under the statute may be justified if a noncitizen obstructs removal efforts by repeatedly refusing ICE requests to fill out passport applications or other necessary documents, or by providing false information about his home country or his parents' citizenship.[51]  The government provides no authority for the argument that a noncitizen's failure to cold-call consulates to seek admission to another country over a 20-year period permits ICE to re-detain him and begins a new 90-day mandatory-detention clock.  So I reject the government's § 1231(a)(1)(C) argument and conclude that Larose's detention may continue only if the government can show that it is significantly likely to remove him in the reasonably foreseeable future.

> b.      *The government has not produced any evidence showing that Larose's removal is likely or foreseeable.*

The government does not meet its shifted evidentiary burden to show that Larose's removal is foreseeable.  It provides no evidence whatsoever to show that Larose is likely to be removed at all.  At the hearing, government counsel essentially conceded that ICE is taking no action to effectuate Larose's removal.  It's undisputed that Larose cannot be removed to his home country, so a third-country removal is the only way in which he can be deported.  But ICE has not given notice of any third country that it is trying to remove Larose to, it has not shown that it has been reaching out to any particular country to inquire about whether they would accept Larose, and it has not shown that it has provided Larose with any applications to fill out or instructions to contact any consulates that may be willing to accept him.  The government hasn't even shown that Larose has been given the tools while detained (i.e., an email account and

---

[51] *See, e.g.*, *Pelich*, 329 F.3d at 1060; *Lemu*, 341 F.3d at 857; *Diouf*, 542 F.3d at 1233.

internet access, or regular phone time) to start attempting to take on this herculean task of self-deporting to a country to which he has no ties. It merely says that it detained Larose because he didn't deport himself within the last two decades. That's insufficient to show that Larose is to blame for his continued detention or that there is a significant likelihood of his removal in the reasonably foreseeable future. So I grant Larose's petition on the ground that his continued detention exceeds the government's statutory authority under *Zadvydas*, and I order his immediate release.[52]

**C.      Larose has shown that ICE arrested him without following its own re-detention regulations.**

Larose also contends that ICE arrested him in a manner that violates its own regulations. To revoke a noncitizen's order of supervision after his release, the government must follow procedures established in the Code of Federal Regulations. 8 U.S.C. § 241.4 dictates that release may be revoked if the noncitizen "violates any condition of release" or when "appropriate to enforce a removal order or to commence removal proceedings against [a noncitizen]."[53] Section 241.13 permits revocation of release if, "on account of changed circumstances, [ICE] determines that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future."[54] If ICE decides to revoke release for any of these reasons, it must provide the noncitizen with notice "of the reasons for revocation" and "an initial informal interview

---

[52] I do not consider Larose's separate claim that his prolonged detention violates the Fifth Amendment's due-process clause. In *Zadvydas*, the High Court interpreted § 1231(a)(6) to prohibit prolonged detention to avoid the constitutional concerns raised by a different interpretation. I follow in the Supreme Court's footsteps and do not reach Larose's due-process arguments because he is entitled to the relief he seeks under *Zadvydas*'s statutory limitation.

[53] 8 C.F.R. § 241.4(l)(2)(iii).

[54] 8 C.F.R. § 241.13(i)(2).

promptly after his . . . return to [ICE] custody to afford [him] the opportunity to respond to the reasons for revocation stated in the notification."[55]

Larose was released on an order of supervision in the early aughts. He alleges that he "has never been told that he was returned to custody because of a 'conditions' violation" and there are no changed circumstances that make his removal more likely now than it was in 2006.[56] He also alleges that he did not receive the required initial interview and he was not invited to contest the revocation of his order of supervision.[57] But in his reply, Larose attaches an unsigned "notice of revocation of release" that he received from ICE, indicating that his supervision was revoked because of a 2024 misdemeanor conviction for "conspiracy to commit a crime."[58] But Larose questions the legitimacy of that reason, noting that he was not told that his supervision was being revoked in 2024 and that, in compliance with his supervision order since that conviction, checked in with ICE and was not told he had violated his release conditions.[59] Plus, Larose points out, the government has offered different reasons why his supervision was revoked: in its brief, it claims that his 2026 DUI charge led to revocation, and at the TRO hearing the government attributed the revocation to Larose's alleged failure to make efforts to self-deport.

Even if I assume that the revocation notice given to Larose when he was re-detained is valid, the government has not addressed Larose's allegation that he was not given an informal interview or an opportunity to contest the reasons for his revocation. "It is a well-known maxim

---

[55] 8 C.F.R. §§ 241.4(l)(1); 241.13(i)(3).

[56] ECF No. 8 at 18.

[57] *Id.*

[58] ECF No. 19-2.

[59] ECF No. 19 at 13.

that agencies must comply with their own regulations."[60]  And, as other district courts have found, ICE's re-detention regulations were intended "to provide due process protections to noncitizens following the removal period as they are considered for continued detention, release, and then possible revocation of release."[61]  It's undisputed that the bulk of those regulations was not followed here.  So I join the growing number of courts that have concluded that the government's failure to abide by its own regulations when arresting a noncitizen warrants his release.  I thus grant Larose's habeas petition on this independent ground, too, and I order his release on the conditions of his prior order of supervision.

**D.      Larose has shown that he may be subject to third-country-removal procedures that violate due process.**

   ***1.         The government's policy provides notice of third-country removal on a truncated timeline and allows screening for fear-based claims if the detainee affirmatively raises them.***

Once it has been determined that a noncitizen is to be removed from the United States, 8 U.S.C. § 1231(b) governs where he will be removed to.  The first choice is a country "to which the [noncitizen] wants to be removed."[62]  If deportation to that country isn't possible, the immigration judge has a list of other options, including the country from which the noncitizen entered the United States, the noncitizen's last country of residence, the country in which the noncitizen was born, and others.[63]  If all of those enumerated country options are "impracticable, inadvisable, or impossible," the noncitizen may be removed to "another country whose

---

[60] *United States v. Ramos*, 623 F.3d 672, 683 (9th Cir. 2010).

[61] *See, e.g., Ghafouri v. Noem*, 2025 WL 3085726, at *4 (S.D. Cal. Nov. 4, 2025) (quoting *Santamaria Orellana v. Baker*, 2025 WL 2444087, at *6 (D. Md. Aug. 25, 2025)).

[62] 8 U.S.C. § 1231(b)(2)(A).

[63] 8 U.S.C. §§ 1231(b)(2)(E)(i–vi).

government will accept" him.[64]  Removal to a country not listed on a noncitizen's removal order is commonly referred to as a third-country removal.

There is one statutory restriction on third-party removal: "the Attorney General may not remove [a noncitizen] to a country if the Attorney General decides that the [noncitizen's] life or freedom would be threatened in that country because of the [noncitizen's] race, religion, nationality, membership in a particular social group, or political opinion."[65]  And CAT, ratified by the United States through the Foreign Affairs Reform and Restructuring Act, entitles noncitizens to seek asylum or withholding of removal to a country in which they are likely to be persecuted or tortured.  Normally, a noncitizen raises CAT protections at or directly following his initial removal proceedings.  It appears that no immigration statute or regulation addresses how a noncitizen may raise a CAT challenge after ICE determines that removal to the country on his removal order is impracticable and instead chooses a third country to deport him to.

In early 2025, ICE tried to fill that statutory gap.  It issued a policy explaining that, as long as "the United States has received diplomatic assurances from the country of removal that [noncitizens] removed from the United States will not be persecuted or tortured" and those assurances are deemed "credible" by the Department of State, ICE need not give any notice or opportunity to be heard to noncitizens who are being removed to that country.[66]  In all other cases, ICE must serve a notice of removal on the noncitizen that informs him of the intended country of removal.[67]  ICE "will generally wait at least 24 hours following service of the notice of removal before effectuating removal," but the policy allows removal on a mere six hours'

---

[64] 8 U.S.C. § 1231(b)(2)(E)(vii).

[65] 8 U.S.C. § 1231(b)(3)(A).

[66] ECF No. 39-1.

[67] *Id.*

notice "as long as the [noncitizen] is provided reasonable means and opportunity to speak with an attorney prior to removal."[68]

After the notice of removal is served, the ICE officer "will <u>not</u> affirmatively ask whether the [noncitizen] is afraid of being removed" to that country, but if the noncitizen independently and "affirmatively state[s]" a fear of removal, ICE's Enforcement and Removal Operations (ERO) division "will refer the case to U.S. Citizenship and Immigration Services (USCIS) for a screening for eligibility for protection" under CAT.[69]  If (through an unidentified process) USCIS determines that the noncitizen has not shown that he "would more likely than not be persecuted on a statutorily protected ground or tortured in the country of removal," the noncitizen will be removed.[70]  If USCIS determines that the noncitizen "has met this standard," ICE will file a motion to reopen immigration proceedings for the "sole purpose of determining eligibility for protection under" 8 U.S.C. § 1231(b)(3) and CAT for the country of removal.[71]

> **2.    *ICE's third-country policy violates due process, so any attempt to remove Larose to a third country must be preceded by notice and a meaningful opportunity to be heard.***

Larose contends that ICE's third-country policy does not provide adequate notice or an opportunity to be heard, thus violating the Fifth Amendment's due-process clause.  "The Due Process clause applies to all 'persons' within the United States, including [noncitizens], whether

---

[68] *Id.*

[69] *Id.*

[70] *Id.*

[71] *Id.*

their presence here is lawful, unlawful, temporary, or permanent."[72]  The "fundamental features of due process" are notice and an opportunity to be heard.[73]

The Ninth Circuit has not expressly ruled on what process is due to noncitizens faced with third-country removal.  But it has come close.  In *Andriasian v. INS*, the Ninth Circuit panel held that immigration officials could not add a new country to the petitioner's removal order without proper notice.[74]  It explained that "[f]ailing to notify individuals who are subject to deportation that they have the right to apply for asylum in the United States and for withholding of deportation to the country to which they will be deported violates both INS regulations and the constitutional right to due process."[75]  And in the unpublished case of *Najjar v. Lynch*, another Ninth Circuit panel cited *Andriasian* for the proposition that, "[i]n the context of country-of-removal designations, last minute orders of removal to a country may violate due process if a[] [noncitizen] was not provided an opportunity to address his fear of persecution in that country."[76]

District courts have extrapolated these holdings to find that adequate due process of a third-country removal requires ICE to (1) provide notice, (2) "ask the noncitizen whether he or she fears persecution or harm upon removal to the designated country and memorialize in writing the citizen's response," (3) "inform the noncitizen that he or she may seek asylum, withholding, and relief under the CAT by filing a motion to reopen with the immigration courts" if the answer to that question is yes, and (4) provide "adequate time to prepare and file a motion to reopen[.]"[77]

---

[72] *Zadvydas*, 533 U.S. at 693 (cleaned up).

[73] *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1205 (9th Cir. 2022).

[74] *Andriasian v. INS*, 180 F.3d 1033, 1041 (9th Cir. 1999).

[75] *Id.*

[76] *Najjar v. Lynch*, 630 F. App'x 724, 724 (9th Cir. 2016) (cleaned up).

[77] *Aden v. Nielsen*, 409 F. Supp. 3d 998, 1019–20 (W.D. Wash. 2019); *see also, e.g.*, *Nguyen*, 796 F. Supp. at 727.

Said more succinctly, "[a] noncitizen must be given sufficient notice of a country of deportation that, given his capacities and circumstances, he would have a reasonable opportunity to raise and pursue his claim for withholding of deportation."[78]  District courts across the country have also routinely found that ICE's third-country policy doesn't comport with due process.[79]

It is abundantly clear that the first third-country-removal option—immediate deportation without notice so long as the accepting country gives generalized assurances that it will not torture anyone—doesn't provide due process to a noncitizen who may be removed to that country.  Notice, let alone an opportunity to be heard, is not available to a noncitizen in that situation.  And ICE's second scheme doesn't fare much better.  Though the policy requires notice, it may be given in as little as six hours before the noncitizen's removal, and that notice explicitly does not advise the noncitizen that he may seek withholding, deferral, asylum, or other protections if he fears removal to that third country.  Even if the noncitizen knows to affirmatively state a fear of removal, the policy does not afford him a hearing of any kind unless an ICE officer determines, through an unexplained process, that he would be likely to prove that any of those protections applies.  So this process does not comport with the fundamental requirements of due process.

I also find that Larose is likely to face a due-process violation from this policy.  He currently cannot be removed to the DRC, and the government has acknowledged that third-

---

[78] *Aden*, 409 F. Supp. 3d at 1009 (citing *Mathews v. Eldridge*, 424 U.S. 319, 348–49 (1976); *Kossov v. INS*, 132 F.3d 405, 408 (7th Cir. 1998)); *see also Kumar v. Wamsley*, 2025 WL 3204724, at *5 (W.D. Wash. Nov. 17, 2025) (finding that this due-process requirement "flows directly from Ninth Circuit precedent" requiring notice of a noncitizen's right to apply for asylum or withholding of removal to a previously undisclosed country, citing *Andriasian*).

[79] *See, e.g.*, *Nguyen*, 796 F. Supp. 3d at 728 ("This policy contravenes Ninth Circuit law . . . . It would be impossible to comply both with Ninth Circuit precedent and this policy."); *Vu v. Noem*, 2025 WL 3114341, at *9 (E.D. Cal. Nov. 6, 2025) (collecting cases); *D.V.D. v. DHS*, 2025 WL 1142968 (D. Mass. Feb. 25, 2026).

country removal is thus the only path for him. So if the government continues seeking his removal, it will be effectuated under its unconstitutional third-country-removal policy. I therefore grant Larose's petition with respect to his third-country-removal claims and prohibit the federal respondents from rearresting Larose with the intention of removing him to a third country unless they comply with the notice-and-hearing requirements established above.

## Conclusion

IT IS THEREFORE ORDERED that petitioner Filho Canon Larose's petition for a writ of habeas corpus under 28 U.S.C. § 2241 **[ECF No. 1-1] is GRANTED**. Petitioner **Filho Canon Larose must be released from detention,** under the terms of the order of supervision that was in place before his arrest, **within three days of this order.**

IT IS FURTHER ORDERED that respondents must file and serve on defense counsel:

(1) notice of the date, time, and location of Larose's release at least 24 hours before the release is set to occur, and

(2) within four days of this order, notice that Larose's release was effectuated.

IT IS FURTHER ORDERED that **the federal respondents are enjoined from re-detaining Filho Canon Larose absent proof that his removal to a specific third country is reasonably foreseeable.**

IT IS FURTHER ORDERED that the **federal respondents are enjoined from removing Filho Canon Larose to a third country unless it first complies with the notice-and-hearing requirements detailed in this order**.

IT IS FURTHER ORDERED that counsel for respondents is directed to immediately provide notice of this order to the restrained parties they represent.

21

IT IS FURTHER ORDERED that Larose's motion for a temporary restraining order **[ECF No. 10] is DENIED** as moot.

IT IS FURTHER ORDERED that the federal respondents' motion for leave to file a supplement **[ECF No. 23] is GRANTED**.

The Clerk of Court is directed to (1) update the caption to correct the petitioner's name to Filho Canon Larose; (2) SEND a copy of this order to the Warden of Nevada Southern Detention Center in Pahrump, Nevada, and (3) CLOSE THIS CASE.

_____
U.S. District Judge Jennifer A. Dorsey
May 14, 2026